The Judges pronounced their opinions.
JUDGE TUCKER.
This was a bill brought by Hopkins to set aside the sale and conveyance of 200 acres of land, (part of a tract of 400 acres, in Louisa County,) sold on the 19th of December, 1786, by the Deputy Sheriff of Louisa County, for the taxes due thereon for the years 1784 and 1785, and purchased by Yancey, the deputy Sheriff, (by whom the sanie was distrained and sold,) and afterwards conveyed to him by the High Sheriff; and then sold by the defendant Yancey to the defendant Faris. The Chancellor set aside the sale, and decreed that the deed should be cancelled.
It was objected by the appellants’ counsel that the complainant had a plain remedy at law, by an ejectment, to recover the premises. But I am of opinion that he had a right to come into a Court of Equity for the purpose of setting aside a deed which might have obstructed his recovery in an ejectment. And it was more beneficial to the defendants that he should do so, as they might, by their answer, purge themselves of any imputation of fraud or collusion in making the sale. Besides, the object of the hill was to compel a reconveyance of the land from the defendant Faris, which a Court of Law could not enforce. And as a single verdict in ejectment might not have been conclusive, I think the parties pursued the most proper bourse.
The complainant at the time of this sale was an infant of very tender j'ears, to whom the land was devised in fee-simple by his father, whose will bears date in June, 1780, and was proved and admitted to record in-Louisa County, in August, 1782. It does not clearly appear that he had any guardian ; none being appointed by the will. Anthony Hayden qualified as an executor. He resided in another County. The infant’s mother removed from Louisa, 428 in *1785, having married another husband, who before that time (it would seem) sold her dower estate to the defendant Faris, who then actually resided upon the land. She did not return till 1795. Faris had property upon the land sufficient to have paid the taxes.
The land was charged in the Commissioners’ books to Elizabeth Hopkins, the complainant’s mother, and was sold by the defendant Yancey, and purchased by him, and convej'ed by the High Sheriff to him, as the property of the said Elizabeth Hopkins, which had been sold for the taxes due thereon.
I will here premise(b) that, whenever an authority is given to any person, or officer, by law, whereby the estates or interests of other persons may be forfeited and lost, or otherwise affected, such authority must be strictly pursued in every instance. And any omission, or mistake, in the performance of those duties which the law prescribes, will vitiate the whole proceeding. More especially, where an act is in its nature so highly penal, that a man may absolutely lose his whole property, for a few days’ neglect in the payment of a tax which has never exceeded one hundredth part of the valuation thereof by sworn Commissioners; and where the law has left the power of enforcing that penalty in the hands of a mere ministerial officer, who may, as in the present case, become the purchaser of the lands himself, for the bare amount of the tax due thereon. And, above all, in the case of an infant, without any guardian (as far as appears in this case) to protect him, or his property, from utter ruin and destruction.
By the act of October, 1781, c. 40, the Commissioners of the taxes are required to take an account in writing of the quantity of land belonging to all persons within their County, (except their own,) and also-the name of the proprietor, or proprietors, thereof; and ascertain the value thereof. And in all valuations pursuant to that act, the same rules and regulations are to be observed, with respect to and between landlords and tenants, (unless the contract 429 *between them be specially other *167 wise,) as directed by the act of October, 1777, c. 2, s. 6, which provides, that, where the landlord shall reside out of the Commonwealth, or have no visible estate whereon to levy the pound rate, for the value of his land, in such case the pound rate shall be paid by, or levied upon, the tenant, not exceeding the annual amount of the rents which shall be allowed him by the landlord. The same act, sect. 8, further provides, that, where any lands shall be assessed in a County, wherein the proprietor doth not reside, nor hath any effects whereon to levy the said pound rate, and the Commissioners shall discover in what other County the proprietor lives, or hath effects, they shall transmit the assessment to such other County, there to be collected, &c. (a)
Neither the acts of 1781, c. 40, or October, 1782, c. 8, contain any specific provision on the subject of the tax on lands belonging to proprietors not residing in the County, as far as I can discover; so that the case of such proprietors is either wholly omitted, or falls under the provisions of the act of 1777, c. 2, s. 6, and 8. But, by the act for equalizing the land-tax, passed in October, 1782, c. 19, the duty of the Commissioners of the taxes is enlarged. By that act they are to make diligent inquiry of all lands within their County which had not been theretofore valued; and also of all alienations or partitions which may be made: and, for that purpose, they are to be furnished yearly by the Clerk of the General Court, and of the County, with lists of all conveyances or partitions within the preceding year in the respective Courts admitted to record; and if the purchaser or seller shall not, before a certain day, have satisfied the Commissioners as to the just value of the land, the same shall be charged as land of the best quality in the County.
Prom the exhibits it appears that Joseph Hopkins’s will, wherein he devised these 400 acres of land to his son Bund Hopkins, the complainant, was proved in Bouisa Court, two or three months only before the passage of this last act; that Beaver, who married Hopkins’s widow, sold his 430 wife’s right ^therein, viz. 1331-3 acres, to the defendant Paris, the 10th of September, 1785; and, by the several answers and other evidence in the record, that the whole tract was charged by the Commissioners of the land tax to Elizabeth Hopkins, and not to Bund Hopkins, to whom it was devised; that she had removed away in 1785, and, probably, (though that does not appear,) carried her children with her.
By the act of 1784, c. 91, one half the taxes for the year 1783, "were remitted: and, for the other half, it permitted a. distress to be made on the first of September, 1785. But the act of 1785, c. 38, postponed the time of making distress for the same until the first of March, 1786: so that Paris was in actual possession, either as a tenant or as a purchaser, long before that period.
Prom this view of the case, it appears to me that the Commissioners of the tax either mistook or neglected their dutss by charging the whole land to Elizabeth Hopkins, to whom it was not devised, even during her widowhood, as I apprehend. The Sheriff also mistook his duty, I think, in selling the land itself, instead of distraining the property of Faris, who lived upon and claimed a title to a part, as a purchaser from Beaver, the husband of Joseph Hopkins’s widow. Or, if the act of 1777, c. 2, before referred to, may be considered as in force so far as relates to the lands of proprietors not residing within the County, if the Commissioners had discovered where the proprietor of the land ' resided, they ought to have transmitted the assessment to the County where he resided, or had effects. But I arn not altogether satisfied that this act was not repealed by the act of October, 1782, c. 8; and, if so, it would seem that the case of non-residents’ lands was omitted in that act, as well as that of 1781, c. 40. So that, whichever way the subject be taken, there has been a fatal mistake, either on the part of the Commissioners, or of the Sheriff, and consequently I conceive the sale to be absolutely void, as against the true proprietor of the land, who was the complainant, Bund Hopkins.
*And here I will add that I proceed entirely on the ground oí mistake in the officers of the Commonwealth, and not of fraud in the defendant Yancey, by whom the sale was made. I have not considered the case as to Paris, further than to say that he must be considered as a purchaser with full notice. For, knowing the land to have been sold, under colour of an authority given by law to a public officer, who was not the proprietor thereof, he was bound to inquire, and to take notice, whether that officer, and all others whose agency was required by law, had proceeded with due regularity in discharge of their duty.
On these grounds, and not on the ground of fraud, I am of opinion that the Chancellor’s decree be affirmed, (b)
JUDGE ROANE.
Seldom has a case occurred in which my opinion differed more diametrically from that of the Court below, than in the one before us. Instead of having committed an odious fraud meriting the unusual reprobation of directing the decree, rendered in this cause, to be recorded in the Court of the County in which the transaction happened, the testimony has entirely convinced me that the appellant Yancey acted with all imaginable fairness touching the sale in question. There is not an iota of testimony tending to produce any other inioression upon my mind.
The taxes due on the land in question were debited to the Sheriff as due from Elizabeth Hopkins, (see the certificate of the auditor,) and it was not for that officer to consider them as due from any other; or, in other words, to depart from the Commissioners’ books in this respect, and take upon himself the responsibility of settling the rights of property, and scrutinizing into titles: that the Sheriff was to govern himself, in this particular, solely by the Commissioners’ books, who and who only were to make the necessary alterations therein *168 resulting from conveyances, &c.- is evident not only from the act of 1782, equalizing the land-tax, (which provision is also 432 kept up to the present day,) *but is moreover supported by the opinion of Judge Tucker in Kinney v. Beverley, (2 H. & M. 330,) who says in emphatical terms, that those books are to be “the guide of the Sheriff in collecting the taxes.” There was no personal property upon the land belonging to the person to whom the tax was charged, whereof it could be made; and the Sheriff was consequently bound to sell the land itself. Nothing is more clear than that, according to the true construction of the acts by which this case is to governed, such personal propertj' only was liable to be taken, and not the property other persons which might chance to found upon the premises: and it was not until the act of 1790, c. 5, that a hint was given in our laws that the property of the tenant might be-liable. The testimony in this case shews us, that this sale was duly advertised in the Gazette, and the deposition of Charles Yancey, sen. aided by other testimony, in the cause, entirely satisfies me that it was also duly advertised at the Court-house, and other public places in the County. Considering the great lapse of time which has occurred, and the fleeting nature of such circumstances, it is unreasonable to expect more satisfactory proof on this last point, than is furnished in the case before us. The sale was fairly and openly made at the most noted place upon the premises on a credit of one month ; the bystanders were repeatedly invited to bid; their opinion was asked and followed as to the manner of laying off the land sold: it was not till after a failure to bid by other persons that the Sheriff himself made the bid which finally secured to him the land; and public notice was given at the sale, and afterwards repeatedly renewed, in particular, to the guardian of the appellee, that the land purchased might be redeemed in a reasonable time for his benefit. Y.et a great length of time, amounting to many years, was suffered to elapse before any effort whatever was made to this effect; prior to which the lan‘d was sold to the other appellant.
With respect to the infancy of the appellee, although the *act of 1790, c. S, has allowed three years for an infant to save his land, after his infancy has expired, I do not find that any provision was made in favour of infants by the acts of the period at which this transaction took place. They are therefore to be bound by the general words of the act, as well as adults. On this principle, I recollect it to have been somewhere decided that infants would have been bound by the general provision in the act of limitations, but for the special exception therein inserted in their favour.
Objections, however, are made in this case, 1st. To the legality of the purchase by the Sheriff himself; and, 2dly. To the lowness of the price given for the land, whence, I presume, it was inferred, or supposed, that the transaction was fraudulent.
As to the first objection, it may be re- < marked that, while the law was imperious upon the Sheriff, under a heavy penalty, to finish his collection by a short and given day, without any other allowance than for insolvents, which certainly do not include persons having land liable for taxes; while it is a maxim of justice and sound sense, that, when the law requires a thing to be done, it also gives the necessary means of doing it; and, while there was no express inhibition at that day, in any statute, against the Sheriff’s bidding for his own private emolument, such inhibition is not, on the other hand, to be inferred from the reason of the principle on which, in other cases, it has been held that certain descriptions of persons are disabled to purchase property offered for .sale by themselves. The inhibition in those cases seems to arise from the confidence placed in, and the intimate knowledge acquired by, trustees, commissioners of bankruptcy, auctioneers, &c. which would enable them, if permitted to purchase, to avail themselves of facts coming to their knowledge in their several characters, and, by withholding them from others, to lessen the prices of the articles exposed to sale, to their own emolument, (a) But, in the case in question, no confidence has been reposed in the Sheriff, and no facts 434 have come to *his knowledge, which he might abuse to his own advantage: he has no other information on the subject than is derived from the books of the Commissioners as aforesaid: it would be too much to suppose him conusant of the particular circumstances attending all the tracts of land in his County. This case then does not seem to tall within the reason of the principle before mentioned; and it is not shewn by anyr adjudged case that their inhibition has in England been extended to Sheriffs, or Collectors, though, I presume, the case must have occurred in a thousand instances. It is true, indeed, that the act of 1787, c. 42, premising that abuses had taken place in this particular, declared that a purchase of lands sold for taxes by Sheriff or Deputy Sheriff, and bought by himself, should thereafter be considered as held in trust for the payment of the taxes, and might be redeemed by the proprietor: but on this act it is to be remarked that it not only does not apply to this case, being posterior to it, but, on the other hand, admits aud recognises the frequency of the practice of bidding by Sheriffs in such cases, or, in other words, the custom of the country in that particular; and, on this ground, brings this case within the reason of the decision of this Court in respect of executors, in the case of Anderson v. Fox, 2 H. & M. 245. In that case it was held, or seems to have b.een held, on this last ground only, i. e. the practice of the country, and the consequences resulting from departing suddenly from it, that a purchase by an executor from himself, if fair in all respects, should be supported. (See Judge Tucker’s opinion, p. 263.) If such considerations were considered to have this effect in a case coming directly within the principle aforesaid, (for an executor is emphatically possessed as *169 well of the secrets, as of the confidence of the testator respecting his property,) much more so will they have that effect in cases in which such knowledge and confidence is wholly wanting: if they had this effect, in cases in which the purchase bjr the executor was entirely voluntary, much 435 more so would they have *that effect where the provisions of the laws on this subject would, as it were, inflict a penalty upon the Sheriff for not bidding, and where his bidding might be absolutely necessary to counteract combinations to defeat the collection of the revenue, whether arising from the sympathy of the bystanders, or other causes. As to the general custom on this point, it does not rest onljr on the recognition of the act of 1787, and various other acts of Assembly, but is admitted, in this case, by the deposition of Charles Yancey, sen. who also instructed the deputies acting under him to purchase, in case no other person would do so.
With respect to the price at which this land was sold, it is true it was remarkably low; but it is also proved that the land was of very indifferent quality ; that lands of that description would scarcely sell at any price; and that there were a great many tracts offered for sale in Louisa, at the ■same time, and for the same purpose: indeed, according to the deposition of Captain Hughes, who ori one occasion acted as cryer of these lands, it may be said that this tract, comparatively, sold well; for he tells us that many whole tracts of land were sold to pay the taxes, whereas only half of the tract in question was found necessary; whence it would seem that this land sold for 100 per cent, more than some other tracts in the same County.
On these grounds, and because the appellant Y'ancey was compelled by the laches of the appellee’s guardian to hold the land, (which is also proved to have been very unproductive, ) and pay taxes thereon, for a term vastly longer than that subsequently allowed, b3T law, to infants to come forward and redeem their lands, I am of opinion that the bill of the appellee ought to have been dismissed. While it is very probable that many abuses may have occurred in cases like the present, the testimony in this cause (while it is not seen that the purchase was at ’ that time interdicted by the provisions of any statute, or any equivalent principle, and was sanctioned on the other hand b3' the practice of the 436 ^country) convinces me that the appellant Yancey acted in the case in question with all imaginable fairness.
My opinion is to reverse the decree, and dismiss the bill.
JUDGE FLEMING.
It has been well observed by Judge Tucker that, whenever an authority is given to any officer, or •other person, by law, whereby the estates or interests of other persons may be forfeited, or lost, such authority must be strictly pursued in every instance: and, I will add, that penal laws of every description are to be strictly construed ; and nothing therein taken by implication, or intendment; and, more especially, where the estates or interests of infants may be affected: and the j laws subjecting lands to be sold for the payment of taxes I consider as highly penal. By the act of October, 1871, c. 40, the Commissioners of the taxes are required to take an account in writing of the quantity of land belonging to all persons within their County, (except their own,) and also the name of the proprietor or proprietors thereof. Here, then, at the very threshold of the business, the direction of the law was departed from, by the Commissioners’ mistaking the proprietor, and entering the whole 400 acres devised to Lund Hopkins, by his father Joseph Hopkins, as the land of Elizabeth Hopkins, when she had onl3" a life-estate in one third part, as her dower therein. The Sheriff’s books for the collection of the taxes were, no doubt, made out from those of the Commissioners; and thus the mistake was continued till the 19th of December, 1786, when the land belonging to Lund Hopkins, an infant of tender years, was sold, as the land of Elizabeth Hopkins for less, perhaps, than a fortieth part of its real value, at a time, too, when it is in evidence that, at the day of the sale, there was property on the premises sufficient to have paid the taxes due, belonging to Richard Faris, who then lived thereon, as purchaser of the dower of Joseph Hopkins’s widow, who, at that time, was married to Samuel Baber, 437 or Beaver, and x'Faris afterwards became a purchaser of the land in controversy, with full knowledge of the preceding circumstances; having declared in the presence of Martha Anderson, (about the time he made the purchase,) that he expected to be sued for the said land, but that he bought it “to spite the rascal;” alluding to Lund Hopkins, as the witness supposed.
For these reasons, I think the decree is a just one; though not on the ground of any fraud practised by the Sheriff: and it is an invariable rule with me never to reverse a judgment, or decree, without a thorough conviction that it is erroneous.
By the majority of the Court the decree was affirmed.

 See Chan. Rev. 60, 61.

 See the act of 1787, c. 42, to remedy abuses in sales of lands for taxes.

 Sugden’s Law of Vendors, 391—405.